21-11-251 Glade Creek Partner v. Commissioner of Internal Revenue All right, we have Mr. Rhodes here for the petitioner. Ms. Bringer here for the respondent. No hurry. Once you're settled and once we're settled in the back, I'm sad to report that the crowd was not for you. It never is. Welcome to your life, huh? All right, you may proceed when ready. Mr. Rhodes. Thank you, Your Honor. Craig Rhodes for Appellant Glade Creek Partners. Your Honor, when this appeal was originally filed, it involved two issues. The primary issue was the tax court's disallowance of Glade's deduction for a conservation easement on the grounds that the easement failed to comply with Treasury Regulation 1.170A14G6, also known as the Proceeds Regulation. After the case was filed and then briefed, this court in a unanimous panel decision in Hewitt determined the Proceeds Regulation was arbitrary and capricious for failure to comply with the APA's procedural requirements and therefore was invalid. That resolves the lion's share of this appeal. Unless your honors have questions about that issue, I'll move to the second issue. The only question I have, and again, continuing on a theme, it may be a dumb question. If we agree as we must with Hewitt as to the Proceeds Regulation, do we go on to the valuation question or do we need to shift that back anyway? Your Honor, I believe the valuation question has to be resolved for purposes of the penalty that is outstanding at this time because there is a separate valuation misstatement penalty. So the short answer is we've got to keep going? Yes, Your Honor. All right, let's do it. The second issue, Your Honor, was the court imposed a substantial valuation misstatement penalty against the taxpayer in an instance in which the commissioner presented no, zero evidence, credible evidence on the central issue of valuation. In this regard, Your Honors, the... Counsel, I think their argument, their best argument is, well, maybe so, but you presented some evidence and the tax court did its own analysis on the evidence you presented. I guess that's somewhat analogous to the government maybe didn't have a good enough case, but then somebody took the stand and made the government's case wrong. Isn't that their position? Isn't that their best position? Your Honor, I think that's probably their best position. However, I would posit that the tax court erred by ever going there. When the commissioner failed, first of all, we had an arbitrary and capricious FPAW that was issued in which the commissioner somehow determined that this property, this easement property was worth zero dollars. It maintained that position all the way up until trial, never amended the pleadings and maintained this zero valuation position clearly just to impose the greatest possible penalty. It wasn't until trial that they submitted their expert testimony from Mr. Broom. Mr. Broom came up with a very unreasonably low $630,000 valuation. And the commissioner maintained this position all the way until trial, but frankly, the expert's testimony was so unbelievable that after the case was finished, the trial was finished, the commissioner actually moved to dismiss and to, quote, disavow its own expert's testimony. And so at this point... I know, but that was not done until after you had presented, whoever represented the taxpayer, had presented their evidence at trial, correct? Yes, Your Honor, and that was Mr. Clark. So at the time that the issue was before the tax court, they had both the government's evidence and your evidence? Well, Your Honor, when the tax court decided its opinion, the commissioner had already moved to exclude its expert and disavow it. But my point is, you had already put in your evidence, which the tax court, I think, was free to analyze based on the inputs, the way that it saw fit, once the evidence was before it. Your Honor, I respectfully disagree because I believe at the point in which the commissioner moved to exclude its only evidence on value, it could not sustain its burden of production on a penalty issue. It had zero evidence, and the commissioner is not... That was after the trial, right? I'm sorry, Your Honor. The government moved to exclude its own evidence after the trial. Yes, Your Honor, that's correct. Okay, and at that point, there was evidence in the record which the tax court, which wasn't excluded, wasn't withdrawn, and the tax court used it on its own analysis. Yes, Your Honor, but I would posit that it was the government presented no evidence on valuation, and it had the burden of production. But you did. The government presented some evidence. It just later withdrew it. Yes, Your Honor. Your Honor, what I understand you're asking us to do is pretend that the government had withdrawn that evidence at the time it presented it, and we moved for judgment at that time because there was then no evidence. We didn't present any. We moved for judgment at that time, but that's not what happened. Well, Your Honor, I think reversing back, even if the tax court... We cited a long line of cases in which the Fifth Circuit primarily has held that absent... If you have a valuation case and one party presents evidence and the other party does not, there's a string of cases, Elkins, Caracci, McCord, in which this court has come to the determination, in quotes, it takes two to tango. And so in the absence of evidence to the contrary, the court has accepted the valuation evidence presented by the presenting trial. In this case, there's a further problem, Your Honor, because although the tax court did, and I would argue incorrectly, rely on petitioner's expert to derive its value, it made a critical error when doing so. It adopted, and I think... Before we get to that, let me make sure I understand the procedure set up in this case. The government presented its expert's report at trial. Yes, Your Honor. And then before it withdrew it, did you, your client representative before the tax court, move for a judgment from the tax court on the basis that the government's evidence was insufficient? There's two parts to that. Yes, Your Honor. During trial, after the expert's testimony became... I'm sorry. I'm sorry. Are you saying expert apostrophe s or expert s apostrophe? The respondent offered one expert at trial, and at trial, the problems with his testimony became very clear. We moved to exclude his entire report at that point and asked that the judge had to find in our favor. However, the judge declined to do that and allowed the evidence into, but it was after trial that the IRS moved to exclude its own expert's report. And did the judge rule that the government's testimony was sufficient, or did the judge say, I will withhold a decision on that until after I hear everything? He withheld a decision on that, and then that decision was essentially made for him when the commissioner moved to exclude his own expert's report. Which was after trial. Which was after trial. Yes, Your Honor. testifies that evidence can be considered in determining whether the government has met its burden of proof and production. That seems like what we're talking about here. And, Your Honor, I would... In different contexts. Yes, Your Honor, I believe it is. I believe in this context, the cases, and the commissioner has not cited a single case in which there's been a unilateral presentation of evidence in which the court has come out on the non-presenting party's favor, and we've cited several to the opposite. But with regard to the tax court's adoption of Glade's expert's evaluation, some history here, if I may, is pretty important. This property was 1,300 acres. It was part of a 2,000 acre tract that was purchased in 06 for roughly $9 million. The sellers were using it as ag and recreational land, but the purchasers recognized it could be used as a residential development for second home lots. With that aim in mind, they spent another $6 million on this property. Actually got water to the property, roads in the property, and importantly, they designed a master plan that an engineer actually plotted lots on all 2,000 acres. And all this paid off because in 07 and 08, lots were sold on here for up to $150,000 a lot. This plan was approved for all 2,000 acres. The petitioner, or the appellant's expert, relied on this very master plan in doing his appraisal report. And the tax court adopted Mr. Clark's analysis in its entirety. He agreed with the assumptions at which the lots would be sold at. He agreed with the cost largely. There was a minor discrepancy about how much the lots would sell for. But where the tax court departed dramatically from the ultimate value determined by the lady's expert was it decided without any support in the record to Mr. Clark had separated developer's profit from the discount rate in his analysis. And he gave testimony as to why he did that. The court, after adopting everything else he did, decided to combine those two numbers with no testimony from any other expert saying that that was the correct way to do it. He relied on essentially what is hearsay, a reality rates, realty rates statement in Mr. Clark's report that Mr. Clark said you don't do it that way. But the court, sua sponte, combined those numbers and it's that adjustment and that adjustment alone that resulted in the dramatic change in value. The commissioner says that was a math error. It clearly was not a math error. As Mr. Clark specifically testified, I chose to treat profit as a line item and discount the income stream. That's out of the appraisal book. You can look it up. And if your honor, I see I've run out of time. I'd like to address the reasonable cause if I could have. Yeah, why don't you do that in two minutes. Okay. The tax court also erred in determining that the partnership did not have a reasonable cause in this instance. It's now been agreed that there was a qualified appraisal by a qualified appraiser in this case. The only issue is whether the partnership relied in good faith on that appraisal. Well, the testimony from the manager of the partnership was that he did investigate the property and he did investigate the appraisal. And indeed, he agreed with its conclusions after analysis. And so there was no evidence in the record anywhere to indicate that his investigation wasn't in good faith. And in this regard, I think there's two things that are important here. In the Fifth Circus decision in White House, it said, we are particularly persuaded by White House's argument that the commissioner, the commissioner's expert, and the tax court all reached dramatically different conclusions. In this instance, we've got a case where the commissioner reached a zero valuation. Then it reached a $630,000 valuation. Then it reached a $3.5 million valuation. And now it's advocating for a $9 million valuation and somehow makes the statement that Glade was unreasonable in relying on its most accurate of all these valuations. Very well. Thank you so much. You've got your full three minutes remaining for rebuttal. Ms. Bringer, let's hear from you. Am I pronouncing that right, by the way? You are. Thank you, Your Honor. Beautiful. Good morning, and may it please the Court. My name is Nora Bringer, and I represent the commissioner in this appeal. So we've already covered that Hewitt addresses the regulation issue, and I'll jump right to the substantial valuation misstatement. Before you jump, Ms. Bringer. Yes, Your Honor. We haven't covered whether the solicitor general filed a cert petition today in the Sixth Circus case. No, Your Honor. We filed a letter with this Court on Friday, on April 22nd, notifying the Court that the solicitor general is not filing a cert petition in Hewitt. Ah. That letter. Thank you. All right. Then discuss what you want. So as an initial matter, the general rule is that a taxpayer, or in this case a partnership, has the burden to show that the IRS's determination is not correct. And that rule goes back nearly 100 years, at least, to Welch v. Halvering. The commissioner does not have the burden, as Glade contends, under Section 7491C of the Internal Revenue Code with respect to the penalties that are at issue in this case. The plain text of Section 7491C applies only to individuals. It says the secretary shall have the burden of production in any court proceeding with respect to the liability of any individual. Glade is not an individual. It is a limited liability company that is treated as a partnership. And this is a partnership-level proceeding under TEFRA, the Tax, Equity, and Fiscal Responsibility Act, which does not concern or determine any individual's liability. So, can I ask you a question? You know what's about to come. What do we do with Curtis? Your Honor, in Curtis, Curtis was a partnership-level proceeding. And in an overview or an introduction to the valuation misstatement penalty issues in that case, this Court said the following. The IRS bears the burden of production with respect to a taxpayer's liability for a Section 6662A penalty. But that is the only time in Curtis that this Court discussed 7491C or the burden with respect to penalties. To the extent that that statement could even be read to support the idea that 7491C applies to partnerships, despite the fact that it doesn't say that, it is dicta, which is not binding. 7491C was not part of the holding of the case. It was not necessary to decide that case. And as this Court has said many times, dicta is not binding on anyone for any purpose. So that is what we suggest could be done with Curtis. Moving on to the valuation issue. As a general matter, valuation is reviewed for clear error. It's a factual determination. And Glade contends that the tax court went out on its own and devised its own valuation methodology. But that's not the case. As Mr. Rhodes pointed out, the tax court adopted almost all of what Mr. Clark did, the expert for Glade. The tax court agreed with Clark that the highest and best use of a property was residential development. The tax court accepted the hypothetical plan that Norton created for the easement property. The tax court accepted a seven-year absorption rate. And with respect to the valuation methodology, the tax court applied a discounted cash flow methodology, which is exactly what Clark did. The only aspect of the tax court's valuation that Glade challenges on appeal is its application of a 26.25% discount rate to the net revenues. But that was based on Glade's evidence and position in the tax court. Clark's litigation report itself relied on rates from GuiltyRates.com. He referenced at page 100 of his report a conclusion of a combined 26.25%. Immediately after the chart from GuiltyRates.com, he wrote, the indicated rate from above is 0.2625. And on the next page, he wrote, I use the combined rate of 26.25%. Notably at trial, when he was questioned by the tax court, the court asked Clark which risk factor he used. And Clark responds, about 26.25%. And here's the critical question. The court says, so you discounted the value that would be projected by his, by Norton's plan, the value, by 26.5%. And they go back and forth a couple times about the exact number. And Clark says 26.25%. And then Glade said in its post-trial brief that the combined rate of 26.25% was derived by taking the rates from GuiltyRates.com. The thing is that Clark, even though he told the court that he discounted the value that would be projected by Norton's plan by 26.25%, he did not in fact discount the value by 26.25%. Instead, he discounted the value by 11.25% on $28.5 million in net revenues. And then he applied a 15% straight profit for each year to only $5.9 million in expenses. The tax court, recognizing that that is not what Clark testified that he did in the tax court, applied the 26.25% discount rate as Clark told the court that he did. I would like to speak for a moment about reasonable cause, unless there are other questions about those issues. Seeing none. So the reasonable cause exception to the penalty for a substantial valuation misstatement comes into play under Section 6664C3. And again, whether Mr. Campbell, who is the manager of Glade and sort of the central person for analyzing this question, whether he made a good faith investigation of the valuation is a factual question reviewed for clear error. Now Glade contends, since it's only contention on appeal, that Campbell had a good faith investigation because he relied on the appraisals. But the thing is that Section 6664C3 has two separate requirements. The first is a qualified appraisal by a qualified appraiser. And then the statute specifically says in the second provision, in addition to obtaining such appraisal, the taxpayer made a good faith investigation of the value of the contributed property. So the First Circuit in Kaufman and the D.C. Circuit in the Blau case both said that second requirement has to be doing something. There must be something in addition to the appraisal, just as the statute says. And Glade simply has not shown any evidence of any investigation that Campbell made with respect to valuation beyond the appraisal. And the tax court at page 57 of its brief found that Mr. Campbell's decision to engage two appraisers does not establish a good faith investigation. And that is supported by the record and certainly is not clear error. There were, moreover, red flags that Campbell should have noticed. Can I ask you just a quick question? Yes, sir. So I think I understand your point about the two separate requirements. And so the good faith prong under sort of the second good faith prong can't be satisfied by meeting the first appraisal prong, if you will. What sort of thing are we talking about more? Like you said, there's got to be something more. Like what else is there? I mean, here, as I understand the evidence anyway, the guy got one appraisal because he thought the appraiser had a good reputation. He then got a second appraisal to see how well the two matched up. Like what else should he have been doing? Well, here, Your Honor, there are a couple of red flags that Campbell should have noticed. And this underlies the tax court's finding that Campbell knew the valuation was overstated. Now, the tax court didn't have to go that far. The tax court only had to find that there was not a good faith investigation here. But the kinds of things that should have put Campbell on notice are that the private placement memorandum for the easement transaction that underscores all of this warned that the IRS may have reason to challenge the valuation because the valuation significantly exceeded the amount paid for the property. So there's one red flag right in the private placement memorandum. Now, the tax court also found, and Glade does not challenge this on appeal, that $7 million of the purchase price, remember these are three tracts of land, and two of them were put into the easement, right, roughly. So of the $9 million purchase price for all three tracts of land, the tax court found that approximately $7 million is attributable to the easement property. So that's $7 million. And then the tax court looked at the fact that about $6 million had been done for permitting and infrastructure work and that kind of thing for all three tracts. But the fact of the matter is that for tracts two and three, which are the easement property tracts, utilities had only been run to the borders. Roads had not been built on those tracts. And so the court said, of that $6 million, I'm going to say that about $2 to $2.5 million is attributable to the easement property for appreciation and also for, you know, the benefit to these tracts of land from the infrastructure. So if you add those together, $7 million and $2 to $2.5 million, that gets you to $9 to $9.5 million. And yet here, Campbell accepted an appraisal of nearly two times that amount for the unencumbered easement property. So these are the kinds of things that should put someone on notice that this easement is an inflated value. And I guess at that point, this sort of gets to the root of my question. At that point, let's assume he is on notice. What should he do? I mean, if you're talking about making a good faith investigation of the value of the contributed property, I mean, frankly, if it were me, I'd be like, well, I guess I need to talk to somebody who knows something about valuing property that is an appraiser. But that doesn't sort of like carry the day. So at that point, let's assume once I'm on notice, what should I be doing? Well, you know, I think at that point, a person could certainly go back to the appraiser and say, you know, I noticed that it seems like your valuation is two times the purchase price for the whole property. And we know the whole property is in here. Can we talk about, you know, why you got to that high valuation? You could certainly hire another appraiser. But he did get a second appraisal, right? Or am I just misunderstanding? He did. There was a second appraisal. But the fact is that if the appraisers come back with numbers that are so much higher than the benchmarks that a reasonable person would think about, then there is reason to question that. And, you know, I think a choice that could have been made was to not claim a $17.5 million deduction for the partnership. I'd like to speak just for a moment about a few things for remand. I think clearly this case is going to need a remand for a few reasons. We mentioned in our brief, even if this court generally affirms the tax court's evaluation approach here, there is a minor calculation error that the tax court should fix on remand. There are a few other issues that the tax court did not reach in its initial look at this case because it resolved it on the proceeds regulation basis. And we think the tax court should have the opportunity to look at those issues on remand. Are there any other questions from the panel? I don't think so. Oh, hold on. Yes, Your Honor. I asked your opposing counsel if the taxpayer had reserved this issue at trial. And he said they had because what they did is object at the end of the presentation of the IRS's case and move for a judge. And do you dispute that? Your Honor, I believe what happened in the trial is that Glade moved to exclude the expert's report. And the tax court declined to do that at that point. And as a technical matter, even when the commissioner later asked to withdraw the testimony, the tax court denied that request and left the commissioner's expert's testimony in the record. But I think more fundamentally, as I see it anyway, all of that comes back to the question of burden and who has the burden here. And it's simply not the case, as Glade continues and as a central point of its appeal, that the commissioner has the burden on the penalties. The plain text of 7491C does not apply to a limited liability company or to a partnership. And so, you know, at the end of the day, the tax court valued this property based on evidence that Glade put into the record. And it's hard to see how Glade could object to that on appeal. Any other questions? Thank you. Very well. Thank you so much. Mr. Rhodes, you've got three minutes. Thank you. I want to spend a second talking about Section 749, 7491C and the burden of production. First of all, it's our primary position that it shouldn't matter because regardless of who has the burden of production, once one side makes a proper evidence that's accepted, the other side clearly then has the burden of production to come back and refute that evidence. But notwithstanding that issue, 7491C, the commissioner reads only one word in that statute, individual, and then extrapolates what that word means to an unreasonable conclusion. When you read the actual text of the statute, it says, notwithstanding any other provision of this title, the secretary shall have the burden of production in any court proceeding. It does not say any individual proceeding, which it could have. It said any proceeding, including, for instance, a TEFR proceeding, which this is. And I will note that the commissioner doesn't make the argument that it only shifts in the instance of a partnership. It shifts in the… Yes, Your Honor. Counsel, what the statute actually says is notwithstanding any other provision of this title, the secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty. Yes, Your Honor. That's precisely my point. Congress could have written a statute that said in any individual proceeding. What we have here is a proceeding regarding a partnership. Albeit it's not an individual proceeding, it is a TEFR partnership proceeding. The statute does not… Well, what we have here is not a proceeding about the liability of any individual for any penalty. Your Honor, I would argue that it absolutely is. Partnerships do not pay taxes. If, for instance, this… They also are not individuals. No, but the individuals are the… The liability of the penalty will be on the individual in this instance. And this is probably best analogized. Imagine that we do have a penalty that applies against this partnership, a million-dollar penalty. And the partnership has tons of assets at the end of the day. But the individuals that took this deduction back in 2012 have no assets or any ability to pay. The penalty won't be imposed because the partnership does not pay a penalty. The individuals pay the penalty. In all meaningful wording of the idea of individual liability, it is the individuals that will pay this liability. This is very telling because DYNAMO rests on the proposition. The tax court makes a distinction in DYNAMO in later cases in which it says, well, we're not going to apply this when it's a partnership at issue. We're going to apply this when there is a TEFRA partnership proceeding at issue. And so it doesn't make the distinction that this only applies to partnership. It says, no, it only applies to some partnerships in a TEFRA partnership proceeding. And then again, I would submit if you look at the words of the statute, it clearly states any court proceeding in which an individual liability is at stake. And that's exactly what we have here, Your Honor. I see I'm out of time. If I could address one last issue. Yeah, just very quickly. The commissioner, again, on the court's application of the discount rate, it keeps arguing that somehow the Glades expert made a mistake and testified that he was doing a combined discount rate. Again, I have to be very clear. Mr. Clark was unambiguous when he said, I chose to treat profit as a light item and the discount the income stream. That's out of the appraisal book. He clearly knew what he was doing. Now, whether the court disagreed with that and applied its own methodology without support from the record is another issue, but he clearly knew what he was doing and testified to that effect. Okay, very well. Thank you both very much. That case is submitted.